FILED
2015 Jan-27  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Debbie McKenzie,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:13-CV-1891-MHH** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Debbie McKenzie filed this action on October 14, 2013, pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act.  Ms. McKenzie seeks judicial review of a final adverse decision by the Commissioner of the Social Security Administration.[1]  The Commissioner affirmed the Administrative Law Judge's denial of Ms. McKenzie's claims for a period of disability and supplemental security income ("SSI").  For the reasons stated below, the Court affirms the Commissioner's decision.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

## I.   <u>STANDARD OF REVIEW</u>

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin., Comm'r*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (quoting *Dyer v. Barnhart*, 395 F.2d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## II.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Ms. McKenzie alleges that her disability began on October 15, 2003. (Doc. 6-6, p. 4). Ms. McKenzie first applied for social security income benefits on June 10, 2011. (Doc. 6-3, p. 16). The Social Security Administration denied Ms. McKenzie's application on October 5, 2011. (Doc. 6-4, pp. 36–37). At Ms. McKenzie's request, an Administrative Law Judge (ALJ) held a video hearing on April 9, 2012. (Doc. 6-3, p. 13). At the time of the hearing, Ms. McKenzie was 50 years old. (Doc. 6-6, p. 4). Ms. McKenzie has a high school education and past relevant work experience as a general office clerk. (Doc. 6-3, pp. 28, 56–57).

On June 29, 2012, the ALJ denied Ms. McKenzie's request for disability benefits, concluding that Ms. McKenzie is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Doc. 6-3, pp. 13–29). In his 14-page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled." (Doc. 6-3, pp. 16–18). The ALJ also noted that his decision was the third unfavorable ALJ decision issued to Ms. McKenzie within five years. (Doc. 6-3, p. 16) ("ALJ David Horton denied benefits in July 2010. ALJ Cynthia Brown denied benefits in August 2007.").

The ALJ found that Ms. McKenzie "has not engaged in substantial gainful activity since June 10, 2011, the application date." (Doc. 6-3, p. 18). The ALJ determined that Ms. McKenzie had "the following severe impairments: morbid obesity, fibromyalgia, disc and joint disease, hiatal hernia, chronic obstructive pulmonary disease (COPD) with episodes of asthma and bronchitis, bone spurs, irritable bowel syndrome/diarrhea, depressive disorder, NOS and pain disorder." (Doc. 6-3, p. 18). The ALJ concluded that Ms. McKenzie "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Doc. 6-3, p. 18). In making this finding, the ALJ noted that "[n]o medical expert has concluded that claimant's impairments meet or equal a listed impairment" and that "the treatment records failed to document the type of severe impairment required by the noted listings." (Doc. 6-3, pp. 18, 19). The ALJ also determined that Ms. McKenzie's mental impairment did not meet or medically equal the criteria of listing 12.04. (Doc. 6-3, p. 19). The ALJ found that Ms. McKenzie had mild restriction in the activities of daily living; mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and experienced one to two episodes of decompensation, each of extended duration. (Doc. 6-3, p. 19).

Next, the ALJ calculated Ms. McKenzie's residual functional capacity (RFC). After considering the entire record, the ALJ determined that Ms.

4

McKenzie has the RFC to perform light work.  (Doc. 6-3, p. 20).   The ALJ elaborated:

> [T]he claimant can only frequently perform pushing and/or pulling movements with her left upper extremity.  She is limited to frequent balancing, stooping, kneeling and crouching.   She can only occasionally crawl.  She is limited to occasional climbing of ramps and stairs and is to never climb ladders, ropes or scaffolds.  She is to avoid concentrated exposure to extreme cold, extreme heat and wetness.  She is to avoid all exposure to unprotected heights.  The claimant must avoid concentrated exposure to environmental irritants. She is limited to simple, routine and repetitive tasks.

(Doc. 6-3, p. 20).   In making this determination, the ALJ considered Ms. McKenzie's symptoms as well as the extent to which the symptoms were reasonably consistent with the objective medical evidence and other opinion evidence.  (Doc. 6-3, p. 20).

The ALJ considered the treatment notes from Quality of Life health services, where Ms. McKenzie sought treatment in May 2010 and March 2012. (Doc. 6-3, p. 23).  In May 2010, Dr. Carey Goodman assessed Ms. McKenzie with hyperlipidemia and chronic lumbago and advised Ms. McKenzie to eat with discretion and exercise three times a week.  (Doc. 6-12, pp. 41–42).  In March 2012, Ms. McKenzie presented with a rash, back pain, and joint pain.  Dr. Emanuel Joseph assessed chronic pityriasis versicolor, chronic degenerative disc disease, chronic lumbago, chronic hyperlipidemia, and chronic obesity.  (Doc. 6-12, pp. 43–46).  Although Ms. McKenzie complained of severe, fluctuating pain in her

5

middle back, Dr. Joseph noted no acute distress and a "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection." (Doc. 6-12, pp. 43, 45).

The ALJ assessed the treatment notes from Ms. McKenzie's emergency room visits in July and December 2010. (Doc. 6-3, p. 24). In July 2010, Ms. McKenzie was diagnosed with atypical chest pain, pleurisy, and bronchitis. (Doc. 6-10, p. 41). Ms. McKenzie was discharged after injections and medications were prescribed. (Doc. 6-10, p. 43). In December 2010, Ms. McKenzie was diagnosed with acute bronchitis, acute pharyngitis, acute otitis media, upper respiratory infection, and acute sinusitis. (Doc. 6-10, p. 23). Ms. McKenzie was prescribed medication and released in stable condition. (Doc. 6-10, p. 23).

The ALJ considered treatment records from Dr. Vishala Chindalore, a rheumatologist who examined Ms. McKenzie in July and August 2011. (Doc. 6-3, pp. 24, 26). In July 2011, Dr. Chindalore assessed Ms. McKenzie with diffuse joint pain with a clinical picture of fibromyalgia and arthritis. (Doc. 6-10, p. 49). Dr. Chindalore prescribed Lyrica and recommended a graded exercise program. (Doc. 6-10, p. 49). Dr. Chindalore also noted that range of motion of multiple joints was painful, that Ms. McKenzie had some back spasms, and that lumbrosacral spine flexion was painful for Ms. McKenzie. (Doc. 6-10, p. 49). In August 2011, Dr. Chindalore noted that Ms. McKenzie's knee had more

6

osteoarthritic changes, but other joints had good range of motion without effusion, and her back was benign.  (Doc. 6-12, p. 24).  The ALJ emphasized that Dr. Chindalore did not impose substantial restrictions on Ms. McKenzie and in fact endorsed a graded exercise program.  (Doc. 6-3, p. 27).  The ALJ also stated that Dr. Chindalore's impressions regarding pain have limited evidentiary value given his minimal treatment history with Ms. McKenzie.  (Doc. 6-3, p. 28).

Regarding Ms. McKenzie's mental state, the ALJ considered the treatment notes of Dr. Robert Summerlin, a licensed psychologist who on August 11, 2011, examined Ms. McKenzie at the request of the Office of Disability Determinations. (Doc. 6-3, p. 24).  Dr. Summerlin assigned Ms. McKenzie a GAF of 70, indicating mild emotional symptoms, and opined that Ms. McKenzie did not have a psychological disorder that would preclude employment.  (Doc. 6-10, p. 52).  The ALJ gave great weight to Dr. Summerlin's opinion because it was consistent with the medical evidence and Ms. McKenzie's statements that she is able to perform household chores, talk on the phone, drive, shop, watch movies, and bathe and groom herself with minor assistance.  (Doc. 6-3, p. 26).

The ALJ also considered the treatment notes of DDS mental health expert Dr. Kirsten Bailey.  (Doc. 6-3, p. 25).  Dr. Bailey noted a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  (Doc. 6-

10, p. 74). Dr. Bailey also opined that Ms. McKenzie was likely to experience one or two episodes of decompensation, each of extended duration. (Doc. 6-10, p. 74). The ALJ gave limited weight to Dr. Bailey's opinion because Dr. Bailey "did not have the opportunity to examine [Ms. McKenzie], consider testimony about activities, or consider substantial new medical evidence that shows little to no treatment for mental problems." (Doc. 6-3, p. 27).

The ALJ considered treatment notes from Dr. Nadia McKitty, who examined Ms. McKenzie on August 15, 2011 at the request of the Agency. (Doc. 6-3, p. 25). Dr. McKitty assessed Ms. McKenzie with chronic back pain but noted that muscle tone, dexterity, and grip strength were normal. (Doc. 6-10, pp. 62–63). The ALJ gave significant weight to the testimony of Dr. McKitty. (Doc. 6-3, p. 27).

The ALJ also considered the notes of Dr. Robert Heilpern, a DDS medical expert who opined that Ms. McKenzie could perform a range of light work. (Doc. 6-3, p. 25). Dr. Heilpern noted that while Ms. McKenzie's medically determinable impairments could reasonably be expected to produce pain, Ms. McKenzie has full range of motion in every extremity except her lower back, which has a slightly decreased range of motion. (Doc. 6-10, p. 87). Dr. Heilpern also noted that Ms. McKenzie can fix simple meals, wash clothing, drive, shop twice a month, enjoy bird watching, and talk on the telephone twice a month. (Doc. 6-10, p. 87). Dr.

8

Heilpern stated that Ms. McKenzie's statements regarding pain were only partially credible. (Doc. 6-10, p. 87). The ALJ gave great weight to Dr. Heilpern's opinion because his RFC evaluation fully addressed Ms. McKenzie's subjective complaints and credibility and because other medical evidence in the record supported Dr. Heilpern's opinion. (Doc. 6-3, p. 27).

The ALJ noted that Ms. McKenzie returned to the emergency room on December 19, 2011 with complaints of lower abdominal pain. Ms. McKenzie reported her concern that clips may have been left inside of her after her gallbladder surgery. (Doc. 6-3, p. 26). Although Ms. McKenzie rated her pain as a ten, her abdomen appeared normal, and the attending physician noted a full range of motion above and below the injury site. (Doc. 6-12, p. 29). The physician assessed Ms. McKenzie with a urinary tract infection and chronic pain, prescribed medication, and discharged Ms. McKenzie in stable condition. (Doc. 6-12, pp. 28, 30).

The ALJ considered Ms. McKenzie's allegations that she had severe diarrhea problems at least four to five times per week but determined that Ms. McKenzie's treatment records did not support her description. (Doc. 6-3, p. 27). The ALJ also considered Ms. McKenzie's obesity. (Doc. 6-3, pp. 27–28). The ALJ determined that Ms. McKenzie's obesity was severe but not disabling. He factored her obesity into her RFC. (Doc. 6-3, p. 28).

9

Based on the ALJ's consideration of the evidence, the ALJ determined that Ms. McKenzie's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her RFC.  (Doc. 6-3, p. 26).  In support, the ALJ noted Ms. McKenzie's own statements that she can clean, cook, do laundry, shop, drive, visit with friends, talk on the phone, and watch movies.  (Doc. 6-3, p. 26).  The ALJ also noted that although Ms. McKenzie's disability began in October 2003, Ms. McKenzie has not worked since the late 1990s, an indication that her lack of employment may be attributed to non-medical reasons.  (Doc. 6-3, p. 28).

The ALJ determined that although Ms. McKenzie is unable to perform her past relevant work as a general office clerk, there are jobs that exist in significant numbers in the national economy that Ms. McKenzie can perform.  (Doc. 6-3, p. 28).  In making this determination, the ALJ considered Ms. McKenzie's age, education, work experience, and RFC.  (Doc. 6-3, p. 28).  The ALJ also relied on the testimony of vocational expert Dr. Cosgrove, who testified that Ms. McKenzie could perform the following work: a garment folder, of which there are 520 jobs statewide and 42,000 jobs nationwide; an inspector/hand packager, of which there are 380 jobs statewide and 220,000 jobs nationwide; and a small products assembler II, of which there are 3900 jobs statewide and 275,000 jobs nationwide. (Doc. 6-3, p. 29).  The ALJ concluded that Ms. McKenzie "has not been under a

10

disability, as defined in the Social Security Act, since June 10, 2011, the date the application was filed." (Doc. 6-3, p. 29).

This became the final decision of the Commissioner on August 14, 2013, when the Appeals Council refused to review the ALJ's decision. (Doc. 6-3, pp. 2–5). Having exhausted all administrative remedies, Ms. McKenzie filed this action for judicial review pursuant to §405(g) of the Social Security Act, 42 U.S.C. §405(g). (Doc. 1, p. 1).

## III.   ANALYSIS:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if [s]he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that she is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such

11

an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. McKenzie asserts that she is entitled to relief from the ALJ's decision because: (1) the ALJ's decision is not based on substantial evidence; (2) the ALJ's finding that Ms. McKenzie's subjective reports of her pain are not credible is not based on substantial evidence and is not adequately explained; and (3) the ALJ's finding that Ms. McKenzie can perform light work is not based on substantial evidence. (Doc. 11, p. 1). These contentions are without merit.

## A.    Substantial Evidence Supports the ALJ's Determination that Ms. McKenzie Was Not Disabled.

Ms. McKenzie contends that the ALJ's determination is not supported by substantial evidence because the hypothetical question posed to the Vocational Expert (VE) did not fully state Ms. McKenzie's limitations and impairments. (Doc. 11, p. 12). "'[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the

12

claimant's impairments.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).   Ms. McKenzie asserts that the ALJ's hypothetical was deficient because it omitted Ms. McKenzie's pain and assumed an ability to perform light work.   (Doc. 13, p. 6).   The Court disagrees.

At the hearing, the ALJ instructed the VE to open document 16F, the RFC assessment completed by Dr. Heilpern.   (Doc. 6-3, p. 57; *see* Doc. 6-10, pp. 82–89).   The ALJ then gave the following hypothetical:

> [S]o in my hypothetical if you have an individual the claimant's vocational profile with the capacity described there at 16F, but you also add in a need to avoid concentrated exposure to pulmonary irritants, and that's things like fumes, dust, gases, if the individual had that capacity but was limited to simple, routine, and repetitive tasks --

(Doc. 6-3, p. 58).   The ALJ based this hypothetical on Dr. Heilpern's RFC assessment of Ms. McKenzie, as well as adding environmental irritant limitations that Dr. Heilpern did not mention.   (Doc. 6-3, p. 27).   The VE responded that possible available positions for that hypothetical would include a garment folder, inspector/hand packager, and small product assembler II.   (Doc. 6-3, p. 58).

The ALJ assigned great weight to Dr. Heilpern's opinion because his RFC evaluation "fully addressed [Ms. McKenzie]'s subjective complaints and credibility." (Doc. 6-3, p. 27).   Dr. Heilpern's report included Ms. McKenzie's prior medical history.   (Doc. 6-10, pp. 83, 85, 87).   The RFC assessment also

described Ms. McKenzie's reports of constant pain in her wrist, hands, and back, as well as her medically determinable impairments "of DDD in her L-spine, probable fibromyalgia, and mild arthritis in her left wrist." (Doc. 6-10, p. 87). Dr. Heilpern stated that Ms. McKenzie's medically determinable impairments could reasonably be expected to produce pain in these areas, but also opined that Ms. McKenzie's statements regarding her pain "are only partially credible." (Doc. 6-10, p. 87).

The ALJ noted that Dr. Heilpern's opinion was "well-supported by the other medical evidence of record"—evidence that the ALJ discussed at length in his opinion. (Doc. 6-3, pp. 27, 20–28). Therefore, Ms. McKenzie's assertion that the ALJ's hypothetical did not mention pain and assumed an ability to perform light work is not supported by the facts in this case.

## B.   Substantial Evidence Supports the ALJ's Credibility Determination.

Ms. McKenzie asserts that the ALJ's credibility determination is not based on substantial evidence and is not adequately explained. (Doc. 11, p. 12). When a claimant attempts to prove disability based on her subjective testimony of pain, she must provide "evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain or (2) an objective determination that the medical condition could reasonably be expected to give rise to the alleged pain. *Hamby v. Soc. Sec. Admin., Comm'r*, 480 Fed. Appx. 548, 551

14

(11th Cir. 2012).  If the ALJ decides not to credit the claimant's testimony, the ALJ must articulate adequate reasons for doing so.  *Id.*; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

The ALJ described Ms. McKenzie's subjective complaints in detail, including her 2011 function report and her testimony at the hearing.  (Doc. 6-3, pp. 21–22).  The ALJ then considered the objective medical evidence in making his credibility determination.  (Doc. 6-3, pp. 23–28).  Based on his consideration of the evidence, the ALJ determined that Ms. McKenzie's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ms. McKenzie]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment.  (Doc. 6-3, p. 26).  The ALJ noted that Ms. McKenzie was able to clean, cook, do laundry, shop, drive, visit with friends, talk on the phone, watch movies, and engage in bird watching.  (Doc. 6-3, p. 23).  The ALJ found these activities inconsistent with Ms. McKenzie's claims of debilitating pain, diarrhea, sleepiness and loss of grip strength.  (Doc. 6-3, p. 26); *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (stating that while household tasks and hobbies are not considered substantial gainful activity for the purposes of step

one, the ALJ may consider daily activities at step four of the sequential evaluation process).[2]

The ALJ also pointed to several places in the record where Ms. McKenzie's subjective complaints of pain were inconsistent with the medical evidence. Dr. McKitty stated that Ms. McKenzie's muscle tone, dexterity and grip strength were normal. (Doc. 6-3, p. 25; Doc. 6-10, p. 61–63). Dr. Heilpern stated that Ms. McKenzie had full range of motion in every extremity except her lower back, and that Ms. McKenzie's statements regarding pain were only partially credible. (Doc. 6-3, p. 25; Doc. 6-10, p. 87). While Ms. McKenzie described severe diarrhea issues, the treatment records did not describe such a severe problem. (Doc. 6-3, p. 27). The ALJ also noted that Dr. Chindalore did not restrict Ms. McKenzie's activities, but endorsed a graded exercise program. (Doc. 6-3, p. 27; Doc. 6-10, p. 49). Finally, the ALJ noted that although Ms. McKenzie's alleged disability began in 2003, Ms. McKenzie has not worked since the late 1990s, an indication that her lack of employment may not be for medical reasons. (Doc. 6-3, p. 28).

Ms. McKenzie maintains that the ALJ's credibility determination cannot be reconciled with her treatment records from Quality of Life in March 2012, which Ms. McKenzie asserts establish that she is in severe pain. (Doc. 13, p. 6; Doc. 6-

---

[2] Ms. McKenzie correctly points out that participation in everyday activities does not automatically disqualify a claimant from disability. (Doc. 11, p. 13). In this case, however, the ALJ properly considered Ms. McKenzie's performance of particular daily activities as indicative of her ability to perform light, unskilled work.

12, pp. 41–46).   The records, however, do not unambiguously establish that Ms.

McKenzie experiences severe pain.   The portion of the record Ms. McKenzie cites

states:

> **History of Present Illness**
> This 50 year old female presents with:
> . . .
> **2. back pain**
> Onset: gradual without injury.  Severity level is severe.  Duration: 1
> Year.  The problem is fluctuating.  It occurs persistently.  Location of
> pain was middle back.  There was no radiation of pain.  The patient
> describes the pain as deep and sharp.  Context: no injury.  Symptoms
> are aggravated by bending, changing positions, standing, twisting and
> walking.
> . . .
> **3. Joint pain**
> "Pain from l1 to S5 in my vertebra," also diagnosed with osteoarthritis
> and "two doctors said I had fibromyalgia" but now back is hurting "in
> a different spot."  No trauma.

(Doc. 6-12, p. 43).   This is primarily a recitation of Ms. McKenzie's subjective

description of her pain symptoms, which the ALJ weighed in making his

credibility determination.   Moreover, the ALJ gave a detailed description of Dr.

Joseph's March 2012 assessment, which stated that there was normal range of

motion, muscle strength and stability in all extremities with no pain on inspection.

(Doc. 6-12, p. 39).   Therefore, the ALJ properly weighed the Quality of Life

treatment records in making his credibility determination.

　　　In her brief in support of disability, Ms. McKenzie quotes Seventh Circuit

law regarding boilerplate language on credibility.   (Doc. 11, pp. 14–15).   Ms.

17

McKenzie does not articulate an argument, nor does she point to any language from the ALJ's opinion that she identifies as boilerplate language. Therefore, the Court does not address this purported assertion.

## C.   Substantial Evidence Supports the ALJ's RFC Assessment.

Ms. McKenzie contends that the ALJ's RFC assessment is "conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." (Doc. 11, p. 15). This argument is without basis in fact and overlooks the majority of the ALJ's written opinion.

The ALJ engaged in an extensive discussion of the evidence supporting the RFC assessment. (Doc. 6-3, pp. 20–28). The ALJ's discussion included descriptions of testimony from the claimant (Doc. 6-7, pp. 23–30); descriptions of a function report completed by a friend of Ms. McKenzie (Doc. 6-7, pp. 31–41); records from Oxford Family Practice (Doc. Doc. 6-10, pp. 2–13); emergency room records from Stringfellow Memorial Hospital (Doc. 6-10, pp. 14–44; Doc. 6-12, pp. 25–40); treatment records from rheumatologist Dr. Chindalore (Doc. 6-10, pp. 45–49; Doc. 6-12, p. 24); Dr. Summerlin's psychological consultative examination (Doc. 6-10, pp. 50–56); the physical consultative examination of Dr. McKitty (Doc. 6-10, pp. 58–63); the mental RFC assessment of Dr. Bailey (Doc. 6-10, pp. 64–81); Dr. Heilpern's physical RFC assessment (Doc. 6-10, pp. 82–89); and treatment notes from Dr. Goodman and Dr. Joseph (Doc. 6-12, pp. 41–46). The

ALJ described the weight he gave to this evidence based on the source of the evidence and the degree to which the evidence was consistent with the other evidence in the record.  (Doc. 6-3, pp. 26–28).  The Court finds that the ALJ supported his RFC assessment with substantial evidence.

Ms. McKenzie also contends that the evidence does not support a finding that the claimant can perform sustained work activities on a regular and continuing basis.  (Doc. 11, p. 16).  SSR 96-8p requires that when assessing a claimant's RFC, an ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  In his decision, the ALJ cited SSR 96-8p and stated that "[a]n individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."  (Doc. 6-3, p. 17).

After reviewing, weighing, and discussing the evidence in the record, the ALJ determined that Ms. McKenzie had the RFC to perform light work with additional limitations.  (Doc. 6-3, p. 20).  Because substantial evidence supports this conclusion, the Court affirms the ALJ's decision.

IV.   **CONCLUSION**

For the reasons outlined above, the Court concludes the ALJ's decision was based on substantial evidence and consistent with applicable legal standards. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

**DONE** and **ORDERED** this January 27, 2015.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE